FILED - USDC -NH
2022 MAY 9 AM 11:53

5684

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Josephine Amatucci

v.

James Pineo


PETITION FOR INVESTIGATIVE REPORT

UNDER A SUPOENA


1.      The Plaintiff is asking the Court to MANDATE  the Town Manager James Pineo

to produce a copy of is investigation of two employee's  that he admitted he

investigated their crimes against the Plaintiff ....."TWO YEARS AGO".

2.      That she made it very clear to him that the Supreme Court stated that

investigative reports are allowed to the public for accountability of misconduct.

Especially where Pineo did his investigation two years ago.

3.      The Plaintiff filed a complaint to Mr. Pineo asking for an investigation of

employee's  Police Chief Dean Rondeau and Robert Maloney.

4.      For their Conspiracy accusing the Plaintiff of crimes that she never committed.

And she produce evidence beyond a reasonable doubt thst she never committed any

crime,  yet Rondeau had her Maliciously Prosecuted for such crime.

1 OF 22 Pates

5.      The Town Manager Mr. Pineo refused to produce a copy of the investigations, or for the Plaintiff to review such investigations.

6.      Although the  serious  crime of police misconduct by chief Dean Rondeau  may be before the Attorney General for review,   under the law  the Town must  also internally do their own investigation,  for their version of events,  in response  to all Complaints of police misconduct,  filed by the public,  that occurred while the police were on the job.

7.      The Plaintiff then filed a subpoena to Mr.Pineo and handed him the subpoena in person,  and he refused to respond to the Supoena.

8.      Therefore,  the Plaintiff is accusing Pineo of CONTEMPT,  and is asking the court to demand that he produces copies of the investigative reports of police chief Dean Rondeau and Robert Maloney,  employee's of the Town of Wolfeboro.

9.      The investigative reports contain evidence that the Plaintiff needs as a party to a lawsuit against Rondeau and Maloney.  Which is before this court.  Regarding what occurred,  what did not occur  at the Town Dump,  which resulted in an unlawful  malicious prosecution.

WHEREFORE:  The Plaintiff is asking the Court to issue an ORDER TO PRODUCE the investigative reports or if there is no response for the court to accuse Pineo of CONTEMPT OF COURT.   This evidence is critical evidence to prove her claims in a lawsuit.

4.      It is the LAW that a responce to a supoena is MANDATORY.


Respectfully,

Josephine Amatucci

C.  Town Manager James Pineo

*Josephine Amatucci*

2

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

_Cosephine Amaiucci_ )
Plaintiff )
v. )          Civil Action No.
)
_Dean Rondeau & Robert Maloney_ )
Defendant s )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _Town Manager, James Vinco_
(Name of person to whom this subpoena is directed)

❒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: _Produce Investigation Report By Town Manager & Selectman of Dean Rondeau's Assault charges against me, and Maloney's False Accusations, that he was standing in doorway & I pushed him no. the sta._

| Place: _Town Hall office of Town Manager_ | Date and Time: _5 Days - Due May 4 2022_ |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: _Town Hall Town Managers office_ | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____                    _Josephine Amatucci_
Signature of Clerk or Deputy Clerk                    Attorney's signature _Party_

The name, address, e-mail address, and telephone number of the attorney representing (name of party) _____ , who issues or requests this subpoena, are:

_____

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _James S. Pinto Town Manager_

on *(date)* _4/27/2022_

☑ I served the subpoena by delivering a copy to the named person as follows:

_Josephine Amalucci_ _____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                            *Server's signature*

                                   _____
                                            *Printed name and title*

                                   _____
                                            *Server's address*

Additional information regarding attempted service, etc.:



*Town of*
*Wolfeboro*

BOARD OF SELECTMEN
Linda Murray, Chair
David Senecal, Vice
Brian Deshaies
Luke Freudenberg
Brad Harriman

James S. Pineo, Town Manager

Tuesday, May 3, 2022

Ms. Josephine Amatucci
PO Box 272
Wolfeboro, NH 03896

Dear Ms. Amatucci:

This letter is in response to your request dated April 27, 2022 that the Town of Wolfeboro.

> *Produce investigation report by Town Manager & Selectmen of Dean Rondeau's assault*
> *charges against me, and Maloney's false accusations, that he was standing in doorway*
> *and I pushed him down the stairs.*

As you are aware this incident was litigated in Belknap Superior Court.  Because this was being litigated through the courts this incident was deemed not necessary to conduct an employee conduct investigation on Robert Maloney, who is no longer employed by the Town of Wolfeboro.

Further, in the case of Chief Rondeau, neither the Town Manager nor the Board of Selectmen has the authority to investigate or remove police personnel.  Wolfeboro has established a Police Commission which has the authority to appoint and remove, for just cause, police personnel including Chief Rondeau as outlined under RSA 105-C:4

In closing no investigation file or documents related to the incident at Solid Waste exist with the Town Manager or the Board of Selectmen, nor am I required to create or produce documents which do not exist as this matter was handled by the Belknap Superior Court.

Sincerely,

James Scott Pineo
Town Manager

Cc:    Board of Selectmen



David A. Senecal, Chairman
Brad Harriman, Vice Chairman
Q. David Bowers
Linda T. Murray
Paul O'Brien

James S. Pineo, Town Manager

Town of

Wolfeboro

February 3, 2020

Josephine Amatucci
PO Box 272
Wolfeboro Falls, NH 03896

Dear Ms. Amatucci:

I have read your letter to me dated January 13, 2020 (your document number 4651), as well as the other documents you have provided (documents 4652, 4659, 4662 and 4673).

You have requested a meeting or hearing with me as Town Manager and with the Board of Selectmen. You have requested that the Town terminate Robert Maloney, Stephen Champaigne and Police Chief Rondeau. You have also requested that an outside investigator be hired to look into the situation.

Respectfully, I am denying your request for a hearing with me and the Selectmen; and denying your request that an outside investigator be hired. Your allegations appear to be based primarily upon the assault charges brought against you which were prosecuted by the Belknap County Attorney's Office. As Town Manager, I have the duty under RSA 37:6, II to "appoint, upon merit and fitness alone, and to remove, all subordinate officers and employees under [my] [control] ...". However, this duty does not require me to have a hearing every time a complaint is made against a Town employee. I have investigated your allegations enough to know that a meeting or hearing on the conduct of Mr. Maloney, Mr. Champaigne, or Chief Rondeau is not required and would not be productive. Nor do I believe that an outside investigation is warranted.

Further, in the case of Chief Rondeau, neither the Town Manager nor the Board of Selectmen has the authority to investigate or remove police personnel. Wolfeboro has established a Police Commission which has the authority is to appoint and remove, for just cause, police personnel such as Chief Rondeau. See RSA 105-C:4.

Sincerely,

James Pineo
Town Manager

5673

To:      Town Manger Mr. Pineo and Selectmen

From:   Josephine Amatucci

Re:      Right to investigative files

*COPY*

EXHIBIT 1.

On May 29, 2020 the New Hampshire Supreme Court reversed a quarter-century of precedent interpreting the state's ....right to know law (RSA 91-A).... concluding that it had WRONGLY decided the application of an exemption to the statute in prior rulings. Under RSA 91-A:5 IV the Court had previousley held that records concerning an .....internal investigation .....qualified as records "pertaining to internal PERSONNEL PRACTICES" under RSA 91-A:5 and that such records were categorically exempt from disclosure in response to a Right to Know Law request. Uniton Leader Corp. v. Fenniman, 136 N.H. 624 (1993). The ruling in Fenniman was subsequently extended to apply to investigations by third party investigators on behalf of the EMPLOYER.

NH Supreme Court in May of 2020 ruled that RECORDS related to misconduct by public employees are...... NOT AUTOMATICALLY EXEMPT FROM DISCLOSURE.... Releasing more information from government agencies and municipalities.

Justice Gary E. Hicks of the NH Supreme Court stated:

"An overly broad construction of the "internal personnel practices' exemption has proven to be an UNWARRANTED CONSTRAINT ON A TRANSPARENT GOVERNMENT. We overrule Fenniman (Union Leader v. Fenniman) to the extent that it decdied that records related to "internal personnel practices' are categorically exempt from disclosure under the Right -to-Know Law instead of being subject to a balancing test to determine whether such materials are exempt from disclosure. We overrule our prior decisions to the extent that they applied the per se rule established in Fenniman".

The decision opens the door to municipalities to release information about their employees.

..............................................................................................................................

EXHIBIT 2

Also, the NH Supreme Court Justice Patrick Donovan overruled confidentiality, and

1 /3

allowed  access to documents involving alleged police misconduct under the personnel practies exemption of RSA 91a, the state's rigt-to-know law.  The judge wrote:

"We overrule the Fenniiman case Union Leader v. Fenniman,  to the extent that it broadly interpreted the "internal personnel practices"  exemption and its progeny to the extent that they relied on that borad interpretation".

...................................................................................................................

EXHIBIT 3

Our Right To Know Law  does not explicity address requests for police  investigative files.  Also,  does not distinguish between active or closed investigative files.

...................................................................................................................

EXHIBIT 4

### NO PRIVACY WITH REGARD TO OFFICIAL DUTIES

The argument that police officers who have been found to have engaged in misconduct maintain a privacy interest greater than that of the public,  whom they serve,  is SIMPLY WRONG.  Several courts have found that public officials,  including police officers, have NO RIGHT to privacy with regard to their official duties.  See ,  Rutland Herald v. City of Rutland, 48 A.3d at 572 (V. 2012);  Rinsley v. Brandt, 446 F. Supp. 850, 857,-58 ((D.Kan. 1977);  Cowles Publi'g Co. v. State Patrol, 78 P.2d 597, 605 (Wash 1988) .  As stated by the SUPREME COURT of Montana,  "the conduct of law enforcement officers is a sensitive matter so that if they engage in conduct resulting in discipline for misconduct in the line of duty,  THE PUBLIC SHOULD KNOW."  Great Falls Tribune Co. v. Cascade County Sheriff, 775 P.2d 1267 (Mo. 1989).

RSA 105:13-b (1) states:  "Exculpatory evidence in a personnel file of a police officer shall be disclosed prior to trial.  Exculpatory evidence is NOT CONFIDENTIAL.

The Federal Appeals Court ruled that police misconduct records are PUBLIC RECORDS TO BE RELEASED TO THE PUBLIC.  New York Post April 19, 2022.

...................................................................................................................

EXHIBIT 5

The office of the Attorney General in Florida stated that :

"the confidential provisions of Florida Statutes do NOT EXEMPT  AN INACTIVE CRIMINAL INVESTIGATIVE FILE FROM INSPRECTION AND COPYING.  While an active internal affairs investigation is PENDING.".

2

"An investigation shall be presumed to be inactive if no finding is made within 45 days after the complaint is filed."

A question relating to confidentiality of internal affairs investigations and the PUBLIC RECORDS LAW, is that the intent voiced by the Legislature is openness and the availabilit of public records.   The Public Records must be active for denial of public inspection.   Active only if there is anticipation of securing an arrest  or prosecution in the forseeable future.  Or pending appeals.

Therefore,  the Attorney General stated,  "it is my opinion that the confidentiality provisions of the statutes DO NOT EXEMPT AN INACTIVE CRIMINAL INVESTIGATIVE FILE from .......INSPECTION AND COPYING ,  pursuant to Florida Statutes.  While an ACTIVE internal affairs investigation is pending concerning the same complaint.

That the custodian of the record delete only that portion of the record for which an exemption is asserted and to provide the remainder of the record for examination.

..................................................................................................................................

EXHIBIT 6

Under the new standard,  records considered PERSONNEL FILES,  are subject to release.  The government can no longer exempt police misconduct filed under personnel practices.

Supreme Court stating that EMPLOYEE MISCONDUCT RECORDS not automatically exempt from disclosure.  Overturning  a 27 year old precedent.  Cases Seacoast Newspapers Inc. v. City of Portsmuough and Union Leader Corp. v. Town of Salem.

In the 1993 case,  Union Leader v. Fenniman,  the court held that personal practoces was covered imder INTERNAL DISCIPLINARY INVESTIGATIONS. DOSCO[;OMARU OMVESTOGATOPMS/ emptions...personnel-related exemptions-one for "internal personnel practices,  the other to personnel files,  and DISCIPLINARY INVESTIGATIONS in the 1993 case Untion Leader v. Fenniman.

..................................................................................................................................

EXHIBIT 7

In the case of Obiajulu v. City of Rochester,  625 N.Y. S. 2d 779, 780 (N.Y. App. Div. 1995,  the court stated:

"disciplinary files contining disciplinary charges,  the aency determination of those chares, and the penalties imposed ...are not exempt from disclosure"  because they were not

3  𝓑

"personal and intimate details of the employee's  personal life".

................................................................................................

4 𝛽

5679

To:    Mr. Pineo, Town Manager

From:   Josephine Amatucci

April 28, 2022

*Copy*

DEAR MR PINEO:


   You and the Selectmen accepted my Complaint when you stated you investigated my Complaint against Rondeau and Maloney.  You completed your investigation as of your letter of February 3, 2020,  and in your letter signed by all dated February 4, 2022.  However I had a right to a hearing  during you investigation,  under Due Process,  a hearing that you have continuosly denied me  which was a  violation of my Constitutional rights.

### AN INVESTIGATIVE REPORT IS NOT A PERSONNEL FILE

   In refusing me access to the investigative files of Dean Rondeau and Robert Maloney  You Mr. Pineo stated that I cannot access the PERSONNEL FILES of Maloney and Rondeau,   under Chapter 91-a IV. However, a..... PERSONNEL FILE .... means the file is maintained by the agency containing the records of the employee's  employment,  including evaluations,  assignments, status changes,  and imposed discipline.

    Please see attached a statement by the former police chief Stuart Chase who  stated    in an article on the FRONT PAGE of the Greanite State News, on November 23, 2006,   that :

           "Complaints do not go go in-to PERSONNEL FILES,  rather they go into the INTERNAL AFFAIRS FILE."

...........There are ....PERSONNEL FILES.... and ..... PERSONNEL RECORDS..... and an investigatory Report is in a  PERSONNEL RECORD and not a PERSONNEL FILE.  Public Records shall be retained as Personnel Records.   Information contained in Personnel  FILES are priviledged and confidential,  not information in Personnel RECORDS, such as investigatory records.

    I have a right to access the Investigatory report, explaining in detail the reason for  the final decision.  The Town will issue a decison of findings of my Complaint .  Under the law you had 60 days of my request in 2020 to issue a Final Agency Decision,  without a hearing there can be no right to an appeal,  a violation of Due Process.

1  *A*

As stated in a Newspaper Article The New Hampshire Union Leader obtained the ........INVESTIGATORY FILE.......THROUGH A RIGHT TO KNOW REQUEST.  In the case in Manchester,  involving Jonathan Jones,  Jessica Jones and Sandra O'Donnell in a police department holding cell.

## PRIVACY EXEMPTIONS

The Supreme Court Justice Margaret Workman wrote in the case of The Charleston  Gazette v. The State Police,  that information about an officer's  duties WHILE ON THE JOB did not meet a PRIVACY EXEMPTION under the Freedom of Information Act.

With this SUBPOENA I demand my right under.... Due Process.... to  a copy of the INVESTIGATION REPORT that you stated you  completed in the year of 2020,  per your letter of February 3, 2020 (a copy of which is attached) on employee's  Robert Maloney and Dean Rondeau.  A copy of the Report,  a right of a victim of employee  misconduct.

In your letter of February 3, 2020 you stated,  "I HAVE INVESTIGATED" your allegations" on the ASSAULT charges,  brought against you",    charges which involved  Dean Rondeau who ORDERED ,  in a CONSPIRACY ,  with  the Belnap Sheriff's  Dept to prosecute me for an Assault with Bodily Injury,  that did not occur according to the alleged victim  Robert Maloney's Testimony.  And my allegations that Maloney was  NEVER STANDING IN THE DOORWAY, and I never pushed him down two steps in the office of the DUMP.   Which was verified at the trial by Mr. Champaigne.  These were my ALLEGATIONS that you investigated.

This investigation is..... NOT AN INTERNAL PERSONNEL PRACTICE.... where disclosure would constitute an invasion of privacy.

## THE RIGHT TO KNOW LAW AND THE CONSTITUTION

The NH Supreme Court in May of 2020 the Court overturned its own 1993 rulings, in the case of the Union Leader v. Fenniman,  in a decision that restored the promises of transparency and accountability to municipalities under the Right to Know Law and under the  NH Constitution pt 1, art. 8,  facilitating access to public records.  A wide victory for "public's right to know about misconduct by public officials that was previously deemed confidential" .  A historic New Hampshire Supreme Court decision that restored the promises of transparency and accountablility enshrined in the state's  right to knowl law and the New Hampshire Constitution.  That the public's right to know is the bedrock of our Constitution.  That it is a victim's  Bill of Rights to be notified of all Town proceedings.   To be advised of the case progress, when not yet finalized,  and in a final disposition.  For evidence material to a victim's fair trial.

## DUE PROCESS OF THE LAW

2 &

"The purpose of the right to know law is to ensure both the greatest ossible public access to the actions, discussions and records of all public bodies, and their accountability to the people."  NH Civil Liberties Union v. City of Manchester, 149 N.H. 437, 438, 821 A.2d 1014 (2003). Thus the right to know law helps further our state constitutional requirement that the public's right of ACCESS to governmenttal proceedings and RECORDS (whether active or inactive .....SHALL NOT BE RESTRICTED, whether an investigation is final or on-going.  See NH Consitution pt 1, art. 8.

With these rights in mind you have no discretion but to allow me a copy of the investigations you claimed you did on Rondeau and Maloney in February 3, 2020. As I am not requesting INTERNAL PERSONNEL PRACTICES REGARDING:

(1) confidential, commercial or financial information

(2) test questions, scoring keys, and oher examination data used to administrer a licensing examination, examination for employment, academic examination data, or personnel, medical, welfare, library user, videotape sale or rental.

That under the case of N.H. Houseing Fin. Auth. 142 N.H. at 546, 705 A.2d 725   you have a heavy burden to deny me access to the investigative files of employee Robert Maloney and Dean Rondeau. City of Nashua 141 N.H. at 476, 686 A.2d 310.

An investigative report is subject to disclosure under RSA 91-A:4 and :5.  "A right to ensure the greatest possible access to the actions and records of all public bodies. RSA 91-A:1. This law has constitutional dimensions in our Bill of Rights because of the additon to pt.2 art. 8, in 1976, providing that

"the public's right of access to governmental proceedings and records shall .............................................." not be restricted".

A proceeding that covers both active and inactive proceedings of the Town in the case.


Josephine Amatucci

*Josephine Amatucci*


3 ᗩ

*[handwritten annotations: "cd Internal Affairs Files Records" and "They"]*

IV. Records pertaining to internal personnel practices; confidential, commercial, or financial information; test questions, scoring keys, and other examination data used to administer a licensing examination, examination for employment, or academic examinations; and personnel, medical, welfare, library user, videotape sale or rental, and other files whose disclosure would constitute invasion of privacy. Without otherwise compromising the confidentiality of the files, nothing in this paragraph shall prohibit a public body or agency from releasing information relative to health or safety from investigative files on a limited basis to persons whose health or safety may be affected.

V. Teacher certification records in the department of education, provided that the department shall make available teacher certification status information.

VI. Records pertaining to matters relating to the preparation for and the carrying out of all emergency functions, including training to carry out such functions, developed by local or state safety officials that are directly intended to thwart a deliberate act that is intended to result in widespread or severe damage to property or widespread injury or loss of life.

VII. Unique pupil identification information collected in accordance with RSA 193-E:5.

VIII. Any notes or other materials made for personal use that do not have an official purpose, including but not limited to, notes and materials made prior to, during, or after a governmental proceeding.

IX. Preliminary drafts, notes, and memoranda and other documents not in their final form and not disclosed, circulated, or available to a quorum or a majority of the members of a public body. *[handwritten: Not Preliminary]*

X. Video and audio recordings made by a law enforcement officer using a body-worn camera pursuant to RSA 105-D except where such recordings depict any of the following:

(a) Any restraint or use of force by a law enforcement officer; provided, however, that this exemption shall not include those portions of recordings which constitute an invasion of privacy of any person or which are otherwise exempt from disclosure.

(b) The discharge of a firearm, provided that this exemption shall not include those portions of recordings which constitute an invasion of privacy of any person or which are otherwise exempt from disclosure.

(c) An encounter that results in an arrest for a felony-level offense, provided, however, that this exemption shall not apply to recordings or portions thereof that constitute an invasion of privacy or which are otherwise exempt from disclosure.

XI. Records pertaining to information technology systems, including cyber security plans, vulnerability testing and assessments materials, detailed network diagrams, or other materials, the release of which would make public security details that would aid an attempted security breach or circumvention of law as to the items assessed.

XII. Records protected under the attorney-client privilege or the attorney work product doctrine.

**Source.** 1967, 251:1. 1986, 83:6. 1989, 184:2. 1990, 134:1. 1993, 79:1. 2002, 222:4. 2004, 147:5; 246:3, 4. 2008, 303:4, eff. July 1, 2008. 2013, 261:9, eff. July 1, 2013. 2016, 322:3, eff. Jan. 1, 2017. 2018, 91:2, eff. July 24, 2018. 2019, 54:1, eff. Aug. 4, 2019. 2021, 163:2, eff. July 30, 2021.

## Section 91-A:5-a

**91-A:5-a Limited Purpose Release.** – Records from non-public sessions under RSA 91-A:3, II(i) or that are exempt under RSA 91-A:5, VI may be released to local or state safety officials. Records released under this

ch trained assessment y dialing the Statewide Line managed by Harmes 844-711-HELP. addition to our mobile nd virtual network, we ave at least four satellite ns in operation within st month of operations," oyle.

Continued from Page 4"

th the Center for Excellin Advocacy started n. 1, 2014. "There was a disruption in the of funds to Fedcap," McQuaide.

e second contract exin December 2014, was not renewed, acing to Linda Reilly, community relations er at the Rhode Island DH. "We have had association with Fedsince that contract was renewed," she said, but ld not elaborate.

## ctor moves on

hen Rhode Island's governor, Gina Raindo, took over from Linh Chafee at the start of 5, she chose not to reapnt Stenning, who within nths went on to work for cap, where he is now Ser Vice President for the cupational Health Prac-Area.

he controversy in Maine r the potential Fedcap eover of the ASPIRE prom (Additional Support People in Retraining and ployment) led to a Freein of Information request a group that provides al services to low income ainers.

Maine Equal Justice Partrs obtained a copy of Fedp's bid to manage ASPIRE, hich revealed among other ings that the organization s paid out $403,000 in e legal settlements since 013 involving allegations of orkplace discrimination as ell as wage, disability and ersonal injury disputes. ccording to the Maine Sun-

Willard said the police officer, Ryan Boyd, resigned in July 2014, just before a disciplinary hearing was convened as part of the termination process. Police turned the case over to New Hampshire Attorney General Joseph Foster, whose office investigated the case. Willard said.

But a grand jury did not indict Boyd, Willard said.

The New Hampshire Union Leader obtained the investigatory file last week through a Right-to-Know request. It includes written reports of the original Dec. 20, 2013, arrest, notes from Attorney General investigators, audiotape interviews, and the 26-minute videotape of Jonathan Jones, Jessica Jones and Sandra O'Donnell in a police department holding cell.

The three have hired a lawyer who has filed a notice of a civil rights violations against the city. Manchester lawyer John J. Kenison Jr. offered to settle the claims for $475,000, but said he and the city's claims adjustor have not come to an agreement on the amount.

He expects he will have to file a lawsuit against Boyd and the police department.

"Whether they were drunk or not drunk, whether they had just killed the President, you handcuff them, and then you handcuff them to the wall. You don't have any right to pepper spray them," Kenison said.

According to police reports, Derry resident Jessica Jones was driving the wrong way on Pine Street and with the lights off in her car when Manchester police pulled her over.

She was arrested for drunken driving. Her brother and sister were intoxicated, police reports said, and charged with disorderly conduct and resisting arrest. Police reports said all three were uncooperative.

The videotape shows the three handcuffed with their hands behind their backs to a bench in a police department

second burst of OC in the area above Jessica's eyes," he wrote.

O'Donnell became enraged, stomping her feet and kicking. She got a one-second blast of spray. And then Jonathan got a blast, afterward he said "take me out of these cuffs and let's go out back."

Boyd said they all settled down after that, and the video shows other officers eventually cleaning their faces with towels.

"It felt like my face was on fire," said Jessica Jones, who spoke to the New Hampshire Union Leader on Friday. Instinctively Jones wanted to bring her hands to her face, but she was unable.

"I'm traumatized, I couldn't believe it could happen. I felt scared. I didn't know what would happen after that," she said.

Jones, who is now a stay-at-home mom, said she had left a Christmas party and police were belligerent from the initial stop. Several times she pleaded to go to the bathroom to no avail. "I was treated like an animal," she said.

She wet herself and felt both humiliated and enraged, which prompted her to yell at police, she said.

She was pleased to see that Boyd lost his job but surprised that he was never charged with a crime.

Attempts to locate Boyd were unsuccessful.

Charles Reynolds, a retired Dover police chief who consults around the country on use of force issues, viewed the video at the request of the New Hampshire Union Leader. He said the fact that Boyd lost his job is an appropriate outcome.

Excessive use of force often amounts to a misjudgment, a tactical error or a violation of policy, he said. That all can lead to a termination and even a lawsuit, but not necessarily a criminal charge, which includes proving the person intended to commit the crime.

"It's a high threshold to prove someone guilty of a

division circuit, who then forwards it to the assistant chief.

"In reviewing the 'Office of Attorney General investigative file, it appears likely that the forms never made it form the Officer in Charge to the training division supervisor," reads investigation notes written by Attorney General investigator Todd Flanagan.

Willard said he learned about the matter several months after it happened while reviewing use of force reports and the video.

"Immediately I knew that the officer's actions were improper," he said. The three were handcuffed to the bench and essentially a threat to Boyd, he said.

"Because somebody's mouthing off doesn't give you the right to physically abuse them. I was disgusted by the video. We don't train our officers to behave like that," Willard said. Willard said no other officers were disciplined, and he noted that some helped use three towel off the spray.

Willard said police officers have had to pepper spray people in the past when handcuffed to the bench. Kicking, spitting and headbutting are all forms of assault that necessitate a response that could include OC spray, he said.

No other excessive use of force investigations are pending, Willard said last week.

According to previous articles, Boyd joined the police force in January 2012. Boyd was the son of a Derry police officer. He was a police officer in Sudbury, Mass., and was enrolled at University of Massachusetts Lowell when he was hired.

He was earning $60,400 a year at the time of his resignation.

Willard said he notified the attorney general. He expected assault charges would eventually be filed, which would have made the matter public. It's un-

*Review Force whenever located*

# NH Supreme Court Overrules Precedent Protecting Internal Public Employee Investigations.

Brian J.S. Cullen, Esq.

In two decisions issued on May 29, 2020, the New Hampshire Supreme Court reversed a quarter-century of precedent interpreting the state's Right to Know law (RSA 91-A), concluding that it had wrongly decided the application of an exemption to the statute in prior rulings.  The decisions significantly narrow the application of an exemption to disclosure of governmental records under the law and, hence, correspondingly broaden the scope of the statute.  The rulings have significant, if not fully articulated, ramifications for potential disclosure of records concerning internal investigations of public employees.

By way of background, RSA 91-A broadly provides a public right to inspect "governmental records," defined to include "any information created, accepted or obtained by, or on behalf of, a public body" in any form, unless exempted.  In turn, RSA 91-A:5 provides a list of bodies and records that are exempt from the disclosure law, including jury and parole board records.  It also exempts:

> Records pertaining to internal personnel practices; confidential, commercial, or financial information: . . . and personnel, medical, welfare . . . and other files whose disclosure would constitute invasion of privacy.

*'overruled*

RSA 91-A:5 IV.  In, The Court had previously held that records concerning an internal investigation of a police officer qualified as records "pertaining to internal personnel practices" under RSA 91-A:5 AND that such records were categorically exempt from disclosure in response to a Right to Know request.  *Union Leader Corp. v. Fenniman*, 136 N.H. 624 (1993).  The ruling in *Fenniman* was subsequently extended to apply to investigations by third party investigators on behalf of the employer.

Case 1:22-tp-00073   Document 3   Filed 05/08/22   Page 17 of 23

LII > Wex **> Right to confront witness**

# Right to confront witness

## Overview

The Sixth Amendment provides that a person accused of a crime has the right to confront a witness against him or her in a criminal action.  This includes the right to be present at the trial (which is guaranteed by the Federal Rules of Criminal Procedure Rule 43). As well as the right to cross-examine the prosecution's witnesses.

## Constitutional Basis and Purpose

The Confrontation Clause found in the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him." The Clause was intended to prevent the conviction of a defendant upon written evidence (such as depositions or ex parte affidavits) without that defendant having an opportunity to face his or her accusers and to put their honesty and truthfulness to test before the jury.

In *Mattox v. United States*, 156 U.S. 237 (1895), the Supreme Court enunciated the three fundamental purposes that the Confrontation Clause was meant to serve:

1. To ensure that witnesses would testify under oath and understand the serious nature of the trial process;
2. To allow the accused to cross-examine witnesses who testify against him; and
3. To allow jurors to assess the credibility of a witness by observing that witness's behavior.

In *Lee v. Illinois*, 476 U.S. 530 (1986), the Court noted that the Confrontation Clause is one of several constitutional safeguards toc promote fairness in the criminal justice system. In Ohio v. Roberts, 448 U.S. 56 (1980), the Supreme Court left open the possibility that competing interests, such as a jurisdiction's interest in effective law enforcement, might prevail over the right to confront opposing witnesses. However, in *Coy v. Iowa*, 487 U.S. 1012 (1988), the Supreme Court held that that taking other interests into account should not be interpreted as creating exceptions to "the

the individual's privacy interest in nondisclosure. If no privacy interest is at stake, then the Right-to-Know Law mandates disclosure.

Slip. Op. at p.9 (citing *Prof'l Firefighters of N.H. v. Local Gov't Center*, 159 N.H. 699, 707 (2010)) (internal citations omitted). Unlike in the *Portsmouth* case, the Court did not determine in *Salem* whether the redacted items qualified as pertaining to "internal personnel practices." It instead instructed the superior court to make that determination in light of its *Portsmouth* decision.

Because both cases are remanded for further review by the superior court, the full import of the decisions on the public access to internal employment investigations is not definitively settled. Nevertheless, the cases plainly indicate that the withholding of records will be subject to much greater scrutiny.

First, the "internal personnel practices" exemption no longer applies to internal investigative records at all. Many of the records that would fall under that definition – such as vacation and sick leave policies – will almost certainly fail the newly applicable privacy test. It is hard to conceive how such records could be deemed to implicate a privacy interest at all, much less one that outweighs the public interest in disclosure of the record. Of note, in the *Portsmouth* case, the Court discussed but did not expressly overrule its 2017 decision in *Clay v. City of Dover*, 169 N.H. 681. There, the Court determined that a completed rubric form used to compare candidates for employment did fall under the "internal personnel practices" exemption as it "relate[d] to hiring, which is a classic human resource function." *Id.* at 686. The *Portsmouth* decision did not address the continued validity of *Clay*, but at minimum such records will now be subject to the privacy balancing test set forth above.

Second, while the Court stated that records "documenting the history or performance of a particular employee fall within the exemption for personnel files," the Court's failure in the *Portsmouth* case to categorically exempt the arbitration decision from disclosure means that such records do not automatically qualify as personnel records. This is difficult to reconcile with *Pivero v. Largy*, 143 N.H. 187 (1998), a decision only cited by the dissent in the *Portsmouth* case. In *Pivero*, the plaintiff sought to review an investigative file concerning an investigation into his own conduct, including the deputy chief's written summary of a meeting with complaining witnesses that had been temporarily placed in his personnel file. Plaintiff based his request not on RSA 91-A but on RSA 275:56, which provides that employees are entitled (with some exceptions) to review their own personnel files, defined to include "personnel records . . . wherever located." The superior court ordered the records produced,

The use of a city auditor isn't always the best solution, as city auditors usually limit their investigations to questions regarding financial issues.

For very small communities with extremely limited finances, it may not be possible to hire an Ethics Officer or an equivalent. In that case, at a minimum, citizens should verify that their local government has a system of internal controls, such as having more than one person open the mail and having more than one person check over the accounting records.

New York citizens provide a positive example of how citizens can hold their public officials accountable with their project called "Reclaim New York." The citizen–led project formed the New York Transparency Project where citizens can grade the performance of all local government officials based on 29 clear transparency practices. It's a program that all communities can use as a model for better government.

## How a Transparency Portal Supports Accountability and Transparency in Local Government

There's another way that citizens can encourage their local officials to step up and demonstrate their commitment to ethical leadership, and that's by implementing a Transparency Portal by iCompass (https://www.icompasstech.com/). A Transparency Portal is a seamless extension of a local government website that's designed with the accountability and transparency of local government in mind.

Citizens can use the portal to view council meeting agendas and minutes. They can even view a council meeting in progress in real time, which makes access to local government convenient for shut–ins and disabled people, as well as all citizens. Using a simple search box, citizens can retrieve all public documents within seconds. There's no better investment of tax dollars or a sure way to ensure accountability and transparency of local government than by implementing a Transparency Portal by iCompass.



**GRANITE STATE NE**

Exhibit

THURSDAY, NOVEMBER 23, 2006          ESTABLISHED 1859          WOLFEBORO, N.H. GRANITES

# Role of police commission questio

*Commissioner Curtis Pike says there are no 'secret files' as resident Josephine Amatucci*

BY MICHELLE GIGUERE
Staff Writer

**WOLFEBORO** — Words were flying at the police commission meeting on Thursday, Nov. 16. During public input, Wolfeboro resident Josephine Amatucci confronted the commissioners asking if they had separate files from what the police department has. She said Chair Ben Ladd told her earlier this year that the commissioners had special files in which they kept complaints and other documents.

At the meeting, Ladd said he has his own file at home, but it only contains the commissioner handbook and anything that takes place at the meetings. Commissioner Joe Melanson agreed with Ladd saying he, too, had a file at home that contains any information he decides to keep from the meetings. Commissioner Curtis Pike said he did

Amatucci asked Melanson if he knew what happened to the complaint she filed against a police officer. Melanson said he gave it to former Police Chief Brian Black and, as far as he knew, the chief wrote Amatucci a letter back.

Amatucci asked why her complaint was not put into the officer's personnel file, and Police Chief Stu Chase said complaints do not go into personnel files. Rather, they go into the internal affairs file.

"Your complaint is very well documented and in existence," said Chase.

He went on to inform Amatucci that complaints are in Lt. Dean Rondeau's office in the personnel records, not the personnel files; however they are in the same room.

Chase said that he hand delivered the entire complaint and the officer's thick personnel file to the attorney in Concord who deals with all complaints. Amatucci said that the attorney told her there was only one item in the personnel file and asked how the file could be thick if there were only one item.

"I can't speak for counsel," said Chase.

Amatucci asked a few more questions about the commissioners and their files and what happened to

*Do not be in Personnel File*



February 4, 2022

Josephine Amatucci
P.O. Box 272
Wolfeboro, NH 03896

Subject:  Your Request for Agenda Time on Board of Selectmen's Meeting in non-public

Dear Ms. Amatucci:

The Board of Selectmen is not disposed to grant you agenda time at their next meeting in non-public session to further air your views about the Wolfeboro Police Department and the incident at the Solid Waste Facility for the following reasons:

*We ARE Talking aBout AN INVESTIGATION This is FRAUD*

First, as you know, the Board of Selectmen has no authority or involvement in the hiring or firing or disciplining of Police Officers.  In fact, it would be illegal for the Board of Selectmen to try to interfere in those matters which are under the jurisdiction of the Wolfeboro Police Commission pursuant to RSA 105 C:4.  You have been informed by us many times that you need to address your issues and concerns to the Wolfeboro Police Commission.  It would simply be a waste of time for the Board of Selectmen to grant you agenda time for a matter that falls outside their jurisdiction.

Secondly, your hearing to discuss the "investigation of the event at the dump" is denied as the matter has been investigated to the extent the town deems necessary and does not believe any further investigation is warranted as this issue has been litigated.

For all of the above reasons, the Board of Selectmen decline to provide you agenda time at their next meeting.  However, should any new issues or concerns arise please feel free to contact us.

Sincerely,

_____          _____          _____
James S. Pineo, Town Manager    Linda T. Murray, Chair         David Senecal, Vice Chair


_____          _____          _____
Brad Harriman                   Brian Deshaies                 Luke Freudenberg

**Amy Capone-Muccio**

*Josephines Copy*

| | |
|---|---|
| **From:** | Steve Wood <SWood@wolfeboropolice.org> |
| **Sent:** | Thursday, May 05, 2022 11:15 AM |
| **To:** | rt109@metrocast.net |
| **Cc:** | Amy Capone-Muccio |
| **Subject:** | Re: Internal Affairs Investigation of Chief Rondeau |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning Ms. Amatucci,

I am only going to respond to this one more time. You may not like like the answer(s) but they are based on fact.

The Police Commission has full statutory authority over the police Department, period. That means that the Board of Selectmen and Town Manager do not. They (the BOS/TM) cannot legally do and internal investigation of any member of the Police Department and there is no record prior to 1959 that they did. That is the sole responsibility of the Police Commission and is in our purview only.

You can obviously continue to reach out to them about Police Department matters and they will continue to explain that they have no authority and that you should contact the Police Commission. I know you have been instructed that way many times in the past as you called for the termination of former Chief Chase, and now, Chief Rondeau.

Again, you don't have to like the answers or agree with them but they are based on fact. The Commission will no longer respond to court cases that have been heard and verdicts rendered, with not even a hint of police misconduct or impropriety determined by the court, nor will we entertain requests to investigate the Chief on those matters or consider termination without due process, and only once there is some valid evidence to support a claim of wrongdoing in a complaint "not" related to any prior and adjudicated court case.

Sincerely,

Steve Wood, Chairman
Wolfeboro Police Commission

Sent from my iPad

> On Apr 18, 2022, at 11:35 AM, rt109@metrocast.net wrote:
> Dear Mr. Wood:
>      One more thing I forgot to address.   Don't ever tell me to
> stop demanding that the Town Manager and the Selectmen take action
> against RONDEAU.
>      The Town Manager and the Selectmen have already declared in
> writing as to their authority to investigate  the police and poiice chief
> and have done investigations on them.  They have responded to me  in writing
> as to the result of their investigation,  however,  they have used the
> same tactics as you Mr, Wood,  they addressed only what happened at
> the dump,  and not what happened in the court,  where I was
> maliciously prosecuted by Rondeau and the Belnap Sheriff Dept.

That said..... "READ MY LIPS".... I will continuously DEMAND
.1at the town Manager and Selectmen and the entire police department,
> including the police Commissioners, .....TERMINATE..... Dean Rondeau.....
>       "RESPECTFULLY".   Josephine Amatucci
>
> -----Original Message----- From: Steve Wood
> Sent: Wednesday, March 23, 2022 10:31 AM
> To: rt109@metrocast.net
> Cc: NFennessy@preti.com ; Amy Capone-Muccio ; James Pineo
> Subject: Internal Affairs Investigation of Chief Rondeau
>
> Good morning Ms.Amatucci,
>
> As I'm sure you are aware, the documents that you requested relative to the Internal Affairs investigation of Chief
Rondeau have been provided. I now wish to answer your questions about the process and who conducted the
investigation.
>
> In my letter to you dated to you on January 27, 2022, I explained in the first paragraph that the "Wolfeboro Police
Commission" began an internal affairs investigation of Chief Rondeau in response to your complaint, received on
December 3, 2021. Please understand that the Commission was "not" compelled to do an investigation as your case in
Belknap County had been heard and a verdict rendered, and no misconduct by Wolfeboro Police Department personnel
was determined during the investigation by the Belknap County Sheriff's Department. As I stated in may letter to you,
the only involvement Chief Rondeau in your case with Rob Maloney was to ask another law enforcement agency, one
outside of Carroll County to conduct the investigation in the interest of fairness and impartiality, and to prevent any
suspicion of collusion.
>
> I am aware that you have reached out to the Board of Selectmen, and the Town Manager to investigate Chief Rondeau
and terminate him on a number of occasions. You have demanded the same from me. I hope the following explanation
helps you to understand that process which the Police Commission is required to follow by law.
>
> Under NH RSA 105-C:4, the Police Commission is the overall authority of the Police Department. The only body that
can legally investigate the Chief of Police is the Police Commission, and the Commission can only terminate an employee
is with just cause, and only after hearing that satisfies due process. The Town Manager and Board of Selectmen have no
authority over the Police Department so I would respectfully request that you refrain from demanding the Town
Manager and/or Board of Selectmen take action against the Police Department and/or Police personnel as they have no
authority to do so and 2. please reach out to the Wolfeboro Police Commission with any "new" concerns. We will not
entertain any complaints on past cases that have been heard or dismissed by the courts.
>
> Lastly, the NH Attorney General's Office will not investigate cases that have been through the courts and verdicts
rendered unless gross police misconduct was determined during an investigation. That clearly is not what happened in
this matter.
>
> Respectfully,
>
> Stephen D. Wood
> Chairman, Wolfeboro Police Commission
>
>
>
>
>
>